Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E Raintree Dr Ste 140
Scottsdale, AZ 85260-2687
(602) 482-4300
(602) 569-9720 – fax
davis@scottdavispc.com

Steven J. Parsons
Nevada Bar No. 363
LAW OFFICES OF STEVEN J. PARSONS
10091 Park Run Dr Ste 200
Las Vegas, NV 89145-8868
(702) 384-9900
(702) 384-5900 – fax
Steve@SJPLawyer.com

Attorneys for Plaintiff
MICHELE COSGROVE

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **MICHELE COSGROVE**, an individual, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| v. | |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; HARRAH'S OPERATING COMPANY, INC.; HARRAH'S OPERATING COMPANY, INC. LONG TERM DISABILITY PLAN, | |
| Defendants. | |

Plaintiff, **MICHELE COSGROVE**, an individual (hereinafter, simply "Plaintiff"), by her attorneys, Scott E. Davis, of SCOTT E. DAVIS, P.C., and Steven J. Parsons, of LAW OFFICES OF STEVEN J. PARSONS, complains against Defendants, and each of them, and as causes of action against Defendants, alleges and sets forth her Complaint as follows:

### JURISDICTION

1.      Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f), which provisions



10091 Park Run Drive, Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJPlawyer.com

1   give the U.S. District Courts jurisdiction to hear civil actions brought to recover employee

2   benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C.

3   §1331, which gives the Court jurisdiction over actions that arise under the laws of the United

4   States.

5                                                                  **PARTIES**

6       2.     At all times relevant to this action, Plaintiff was a resident of Clark County,

7   Nevada.

8       3.     Upon information and belief, Defendant Harrah's Operating Company, Inc.

9   (hereinafter, simply the "Company") sponsored, administered and purchased a group

10  long-term disability insurance Policy (hereinafter, simply the "Policy") which was issued and

11  fully insured by The Prudential Insurance Company of America (hereinafter, simply

12  "Prudential").

13      4.     The specific Prudential group long-term disability insurance Policy is known as

14  Group Contract No. G-42111-NV.  The Company's purpose in purchasing the Policy was to

15  provide disability insurance and income protection for the Company's employees.

16      5.     Upon information and belief, the Policy may have been included in and part of

17  an employee benefit plan, specifically named the Harrah's Operating Company, Inc. Long Term

18  Disability Plan (hereinafter, simply the "Plan") which may have been created to provide the

19  Company's employees with welfare benefits.

20      6.     At all times relevant hereto, the Plan constituted an ERISA "employee welfare

21  benefit plan" as defined by 29 U.S.C. §1002(1).

22      7.     Upon information and belief, Plaintiff alleges that Prudential functioned as the

23  claim administrator of the Plan and Policy.

24      8.     Pursuant to the relevant ERISA regulation, the Company, and/or the Plan may

25  not have made a proper delegation or properly vested fiduciary authority or power for claim

26  administration in Prudential.

27      9.     Prudential operated under a financial conflict of interest because it fully insured



1  the Policy and made the decisions as to whether Plaintiff was disabled in her long-term

2  disability claim.

3    10.    In administering Plaintiff's claim, Prudential operated under dual and conflicting

4  roles as the decision maker with regard to whether Plaintiff was disabled, and the payor of

5  benefits if it found she was disabled.

6    11.    Prudential's financial conflict of interest existed and manifested because if it

7  found Plaintiff was disabled, it was then financially liable to her for the payment of long-term

8  disability benefits.

9    12.    The Company, Prudential and the Plan conduct business within Clark County and

10  all events giving rise to this Complaint occurred within Nevada, in the jurisdiction of this Court.

11                            <u>**VENUE**</u>

12    13.    Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C.

13  §1391.

14                    <u>**NATURE OF THE COMPLAINT**</u>

15    14.    Incident to her employment, Plaintiff was a covered employee pursuant to the

16  Plan and the relevant Policy, and a "participant" as defined by 29 U.S.C. §1002(7).

17    15.    Plaintiff seeks disability income benefits from the Plan and the relevant Policy

18  pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other

19  non-disability employee benefits she may be entitled to from the Plan, any other Company

20  Plan, and/or from the Company itself as a result of being found disabled in this action.

21    16.    After working for the Company as a loyal employee in the occupation of a Table

22  Games Supervisor, Plaintiff became disabled from working in that occupation, and also

23  disabled from working in any occupation, on or about January 13, 2011.

24    17.    Plaintiff has remained continuously totally disabled from working in any

25  occupation since January 13, 2011 due to her medical conditions.

26    18.    Following the onset of her disability, Plaintiff filed a claim for short-term disability

27  benefits which was administered, reviewed and approved by Prudential, with Prudential



*10091 Park Run Drive, Suite 200*
*Las Vegas, Nevada 89145-8868*
*(702)384-9900; fax (702)384-5900*
*Info@SJPlawyer.com*

1    concluding she met the definition of disability for the entire period of time and maximum

2    duration of the time that short-term disability benefits could be paid.

3          19.    Plaintiff's short-term disability benefits have been fully paid by Prudential and

4    those benefits have been exhausted.

5          20.    Following the exhaustion of her short-term disability claim/benefits, Plaintiff then

6    filed a claim for long-term disability benefits under the relevant Policy.

7          21.    Prudential made every decision regarding whether Plaintiff was disabled pursuant

8    to the terms of the relevant Policy in her long-term disability claim.

9          22.    Upon information and belief, Plaintiff alleges that the relevant Prudential Policy's

10    definition of disability governing Plaintiff's long-term disability claim is as follows:

11    You are disabled when Prudential determines that:

12        •    you are unable to perform the ***material and substantial duties*** of your ***regular occupation*** due to ***sickness*** or ***injury***; and

13        •    you have a 20% or more loss in your ***indexed monthly earnings*** due to that ***sickness*** or ***injury***.

14 
15    After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any ***gainful occupation*** for which you are reasonably fitted by education, training or

16    experience.

17    ***Gainful Occupation*** means an occupation, including self-employment, that is or can be expected to provide you with an income equal to at least 50% of your

18    indexed monthly earnings within 12 months of your return to work. (original emphasis).

19 

20          23.    In support of her claim for long-term disability benefits, Plaintiff submitted to

21    Prudential medical and other evidence supporting her allegation that she met any definition

22    of disability defined in the relevant Policy

23          24.    Prudential found Plaintiff was disabled as defined in the Policy and approved her

24    long-term disability claim and paid her long-term disability benefits from July 13, 2011 through

25    June 1, 2017.

26          25.    During the period of time Plaintiff's long-term disability claim was approved and

27    Prudential was paying her long-term disability benefits, she applied for Social Security disability



1  benefits from the Social Security Administration (hereinafter, simply the "SSA").

2  26.   Following SSA's review, Plaintiff's claim for Social Security disability benefits was

3  approved by SSA; she is currently receiving Social Security disability benefits and has been

4  entitled to those benefits since July 2011.

5  27.   On January 17, 2012, Plaintiff submitted to Prudential notification that her

6  Social Security disability claim had been approved.

7  28.   SSA found Plaintiff became disabled from engaging in any gainful occupation

8  which may exist in the national economy as of January 14, 2011 and approved her disability

9  claim on December 23, 2011 – within 11 months of Plaintiff's date of disability.

10  29.   After reviewing the evidence in Plaintiff's SSA claim file, the SSA found Plaintiff's

11  disabling medical conditions were so severe that they are totally disabling and preclude her

12  from working in any gainful occupation.

13  30.   Plaintiff's evidence was so persuasive that SSA found she met its definition of

14  disability and was unable to work in any gainful occupation, without her even needing to attend

15  a hearing before an Administrative Law Judge.

16  31.   The date SSA found that Plaintiff became disabled, January 14, 2011, is the

17  same date she became disabled in her long-term disability claim with Prudential and the date

18  that Prudential found her disabled when it initially approved her long-term disability claim.

19  32.   SSA's definition of disability (i.e. Plaintiff must be disabled from working in "any

20  occupation") is a much higher and tougher standard to meet than the "Any Gainful

21  Occupation" definition of disability in Prudential's Policy.

22  33.   If after reviewing the evidence in Plaintiff's SSA claim file the SSA concluded that

23  Plaintiff could perform literally "any occupation" – regardless of the salary or wages it may have

24  paid Plaintiff, then Plaintiff would not have satisfied or meet SSA's definition of disability, and

25  SSA would have concluded that Plaintiff was not disabled or entitled to SSA disability benefits.

26  34.   As referenced supra, Prudential's "Any Gainful Occupation" definition of disability

27  in its Policy requires that for Prudential to find Plaintiff was no longer disabled, it had to



1  conclude she could earn fifty-percent (50%) of her pre-disability income.

2      35.    SSA's review and finding that Plaintiff is disabled from working in literally any
3  occupation (regardless of the salary or wage she could earn in that occupation) is highly
4  relevant, probative conflict of interest evidence for this Court to consider with regard the
5  unreasonableness and implausibility of Prudential's contrary decision to terminate her benefits
6  and deny her long-term disability claim.

7      36.    Based on her evidence, Prudential found that Plaintiff met its "Any Gainful
8  Occupation" definition of disability beginning on July 13, 2011 and paid her long-term
9  disability benefits for six (6) years – until it terminated the benefits effective June 1, 2017.

10     37.    Following a review to determine whether Plaintiff continued to meet the "Any
11  Gainful Occupation" definition of disability in the Policy, Prudential terminated her disability
12  claim and benefits, without any medical documentation to support its allegation that Plaintiff's
13  medical conditions had improved in such a way that she could return to an occupation and
14  earn at least Fifty-percent (50%) of her Indexed Monthly Earnings, as defined in the Policy.

15     38.    In a letter dated May 24, 2017, Prudential informed Plaintiff it was terminating
16  her long-term disability benefits beyond that date after finding she no longer met the "Any
17  Gainful Occupation" definition of disability in the Policy.

18     39.    Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Prudential's May 24,
19  2017 termination of her benefits, and submitted additional medical and vocational evidence
20  supporting her appeal and her allegation that she is disabled and meets any definition of
21  disability in the Policy.

22     40.    In support of her claim, Plaintiff submitted to Prudential a November 20, 2017
23  narrative letter authored by her treating board certified internal medicine physician and
24  specialist who opined,

25         "In my many opportunities to observe [Plaintiff], she has been unable to
           maintain attention or sit for prolonged periods of time and requires long rest
26         periods…my conclusion that the patient could not engage in any more than 2
           hours of continuous activity mental or physical in a workday still remains."

27



10091 Park Run Drive, Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJPlawyer.com
Page 6 of  18

41.     Plaintiff submitted to Prudential an October 30, 2017 narrative letter from another one of her treating medical professionals who opined, "…I do not foresee her being able to work any job with all of her medical problems."

42.     Further supporting her claim, Plaintiff submitted to Prudential a Vocational Report from a certified vocational expert dated November 17, 2017, who after interviewing Plaintiff and reviewing the evidence in Plaintiff's claim, along with the "Any Gainful Occupation" definition of disability set forth in the Policy concluded, "[Plaintiff] is unable to perform any occupation which she would earn at least 50% of her previous income because she is unable to perform or sustain any gainful work even at the Sedentary level."

43.     On appeal, as part of its review of Plaintiff's claim for long-term disability benefits, Prudential obtained medical-records only "paper reviews" from two (2) medical professionals of its choosing, named Leonid Topper, M.D. ("Dr. Topper") and, Frank Polanco, M.D., ("Dr. Polanco") who are consulting physicians for MES Solutions.

44.     MES Solutions has a long and extensive business relationship and history of providing biased medical records reviews of claimants of benefits that favor insurance companies, dating back at least *10 years,* in *Garrison v. Aetna Life Ins. Co.*, 558 F.Supp. 2d 995, 1002 (C.D. Cal. 2008)(Aetna abused discretion terminating benefits after relying on records review from an MES doctor).

45.     In other cases, the Court reversed the denial of benefits after an insurance company relied on a MES Solutions doctor's review, see *Maher v. Aetna Life Ins. Co.,* 186 F.Supp. 3d 1117 (W.D. Wash. 2016) and, *Mason v. Fed Express Corp.*, 165 F.Supp. 3d 832 (D. Alaska 2016).

46.     Due to its long business relationship with the disability insurance industry, MES Solutions has no incentive to implement a system or process that allows it to regularly and consistently monitor the independence and impartiality of the medical professionals it retains to perform the type of medical-records only "paper reviews" that it provided to Prudential in Plaintiff's claim.



10091 Park Run Drive, Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJPlawyer.com

47.     Upon information and belief, Plaintiff asserts Drs. Topper and Polanco are long-time medical consultants for Prudential, MES Solutions and/or the disability insurance industry.

48.     Due to their long-time relationship with Prudential, MES Solutions and/or the disability insurance industry, Drs. Topper and Polanco have conflicts of interest and incentives to protect their own consulting relationships with Prudential, MES Solutions and/or the disability insurance industry by providing medical-records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies such as Prudential, and which unreasonably supported the denial of Plaintiff's claim.

49.     In a letter dated February 1, 2018, Prudential informed Plaintiff it was denying her claim for long-term disability benefits, "…because we determined the medical information received no longer supported impairment which would prevent her from performing the material and substantial duties of her regular occupation."

50.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Prudential's February 1, 2018 denial of her claim, and submitted additional medical, vocational and lay-witness evidence supporting her appeal and her allegation that she is disabled and meets any definition of disability in the Policy.

51.     In support of her claim for long-term disability benefits, Plaintiff submitted to Prudential an October 25, 2018 narrative letter authored by her treating board certified internal medicine physician and specialist who opined, "…[Plaintiff] remains incapable of returning to full-time work."

52.     Further supporting her claim, Plaintiff submitted a September 14, 2018 Addendum Vocational Report from the certified vocational expert who had previously interviewed her on November 17, 2017. After interviewing Plaintiff again and reviewing Plaintiff's aforementioned evidence, along with the "Any Gainful Occupation" definition of disability set forth in the Policy, in his report, the vocational expert concluded it remained his vocational opinion that, "…[Plaintiff] does meet Prudential's Policy's definition of disability for



10091 Park Run Drive, Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJPlawyer.com

1   long term disability benefits.  This benefit should be reinstated and based on the available

2   evidence, should never have been terminated by Prudential."

3        53.    Plaintiff also submitted updated medical records from each of her treating

4   medical professionals and a list of her current medications, as well as the significant and

5   negative side effects they cause her to experience, and the impact they have on her ability to

6   work in any occupation and also in any work environment.

7        54.    Plaintiff also submitted to Prudential three (3) sworn affidavits authored by

8   herself, her husband and her daughter, who all confirmed Plaintiff continues to be unable to

9   work in any occupation and that her medical conditions had not improved in any meaningful

10   way since the date she originally became disabled.

11        55.    Upon information and belief, Plaintiff alleges that as part of Prudential's review

12   of her claim, it obtained two (2) addendum/second medical-records only "paper reviews" of

13   Plaintiff's claim from Drs. Topper and Polanco.

14        56.    Pursuant to 29 C.F.R § 2560.503-1(h)(3)(v), Prudential violated ERISA,

15   committing a procedural violation in retaining the same reviewing medical professionals, Drs.

16   Topper and Polanco, to review Plaintiff's claim at two separate levels of its review.

17        57.    As alleged *supra*, Drs. Topper and Polanco are long time medical consultants

18   and medical-record reviewers for Prudential and/or the disability insurance industry and have

19   incentives to protect their own consulting relationships with Prudential and/or the disability

20   insurance industry by providing medical records only paper reviews, which selectively review

21   or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and

22   report(s) which are favorable to Prudential and which supported the denial of Plaintiff's claim.

23        58.    Dr. Topper's relationship with the disability insurance industry dates back at least

24   10 years where he opined in *Rogers v. Metro. Life Ins. Co*., 655 F. Supp. 2d 1081 (N.D. Cal.

25   2009), the Plaintiff was not disabled.

26        59.    A quick search of Lexis finds 27 cases in federal court since 2009 where Dr.

27   Topper is referenced as having performed a medical records reviews for many different



LAW OFFICES OF
STEVEN J. PARSONS

10091 Park Run Drive, Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJParsons.com

Page 9 of  18

1   disability insurance companies, including Prudential (see *Prezioso v. Prudential Ins. Co. Am.*

2   748 F.3d 797, 802 (8th Cir. 2014)), where he opines the claimant is not disabled.

3        60.    A quick search of Lexis finds a number of ERISA disability cases in federal court

4   since 2011 where Dr. Polanco has performed medical records reviews for many different

5   disability insurance companies and in those reviews, he opines the claimant is not disabled.

6        61.    Implausibly, Drs. Topper and Polanco, whose bias is palpable throughout their

7   reports as indicated by Prudential's final denial, are the only physicians who concluded Plaintiff

8   had no work limitations.

9        62.    Notably, Drs. Topper and Polanco are the only *physicians in the record who*

10  *never personally examined, evaluated or spoke with Plaintiff* about her disabling medical

11  conditions and her disability claim.

12       63.    Prudential's denial of Plaintiff's claim based on Drs. Topper and Polanco's

13  medical-records only "paper reviews" and the opinions they rendered in their reports violates

14  ERISA because Prudential's review was not "full and fair" as ERISA regulations require.

15       64.    In a letter dated December 6, 2018, Prudential informed Plaintiff it was denying

16  her claim for long-term disability benefits, after it concluded she did not meet the "Any Gainful

17  Occupation" definition of disability in the Policy.

18       65.    Prior to rendering its December 6, 2018 final denial in Plaintiff's claim,

19  Prudential unlawfully never shared with Plaintiff, or her treating medical professionals (who had

20  all examined/evaluated her personally and opined she was disabled and unable to work in any

21  occupation), the medical-records only "paper reviews" authored by Drs. Topper and Polanco,

22  so that the physicians that had examined and treated Plaintiff could respond to their reports

23  and opinions by addressing the issues and/or deficiencies they and Prudential alleged existed

24  in Plaintiff's claim.

25       66.    Prudential's failure to provide Plaintiff and her treating medical professionals with

26  its reviewing doctors' – Drs. Topper's and Polanco's – reports before issuing its final denial was

27  unlawful pursuant to precedent and the law as interpreted by the U.S. Court of Appeals for the



LAW OFFICES OF
STEVEN J. PARSONS

10091 Park Run Drive, Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJPlawyer.com

1  Ninth Circuit, and unreasonable.

2  67.  Prudential's action in not providing Plaintiff with a copy of Drs. Topper's and

3  Polanco's reports before it denied her claim so she and her medical professionals could

4  respond to them, is not the action a similarly situated un-conflicted ERISA fiduciary would have

5  taken.

6  68.  Prudential's failure to provide Drs. Topper's and Polanco's reports to Plaintiff so

7  she and her medical professionals could respond to them as she and they believed was

8  necessary and appropriate in order to provide Prudential with complete picture of her disabling

9  medical conditions and limitations, violated ERISA and is a breach of the fiduciary duty it owed

10  her.

11  69.  An un-conflicted fiduciary would have shared Drs. Topper's and Polanco's reports

12  with Plaintiff and her medical professionals so they could respond to them, and in allowing

13  Plaintiff to participate in Prudential's review process, Prudential would have lawfully engaged

14  her in a dialogue so she could have cured any alleged deficiencies that it alleged existed in her

15  claim in its denial.

16  70.  Had Prudential engaged Plaintiff in a dialogue regarding any alleged deficiencies

17  in her claim, Plaintiff and her medical professionals would have had an opportunity to perfect

18  her claim as required by ERISA and Ninth Circuit law, so her benefits could have been

19  approved and reinstated by Prudential, rather than denied.

20  71.  As set forth by Prudential in its December 6, 2018 final denial, the deficiencies

21  it alleged existed in Plaintiff's claim were not inconsequential to Prudential, as Prudential

22  asserted the deficiencies were the rationale and the basis which supported Prudential's denial

23  of her claim.

24  72.  As Plaintiff's ERISA fiduciary, it was critical for Prudential to provide Plaintiff and

25  her medical professionals with an opportunity to respond to Drs. Topper's and Polanco's paper

26  review reports as well as what Prudential believed were the alleged deficiencies in her claim

27  at a time when it mattered to Plaintiff under Ninth Circuit law, which is *before* Prudential



LAW OFFICES OF
STEVEN J. PARSONS

10091 Park Run Drive, Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJPlawyer.com

Page 11 of 18

1  rendered its final denial.

2       73.  Prudential's failure to provide Plaintiff and her treating medical professionals with

3  the opportunity to respond to Drs. Topper's and Polanco's reports is an ERISA procedural

4  violation, and precluded Prudential from providing Plaintiff with a "full and fair" review.

5       74.  Prudential's action in not providing Drs. Topper's and Polanco's reports to her

6  and her medical professionals violated ERISA and Ninth Circuit case law as held in *Salomaa*

7  *v. Honda Long Term Disability Plan*, 642 F.3d 666, 680 (9th Cir. 2011):

8       "The plan evidently based its denial in large part on review of Salomaa's file by two physicians, one for the first denial, *another for the final denial*. They

9  both wrote their appraisals for the plan administrator. Yet the plan failed to furnish their letters to Salomaa or his lawyer.  The regulation, quoted above,

10  requires an ERISA plan to furnish 'all documents, records, and other information relevant for benefits to the claimant.' *A physician's evaluation provided to the*

11  *plan administrator falls squarely within this disclosure requirement"* (bold and emphasis added).

12

13       75.  In Prudential's final denial dated December 6, 2018, notwithstanding Plaintiff's

14  aforementioned evidence, which clearly proved she met and continues to meet "Any Gainful

15  Occupation" definition of disability in the Policy, and that her medical conditions had not

16  improved in any way since she initially became disabled in 2011, Prudential notified her it had

17  made a final denial in her claim for long-term disability benefits.

18       76.  In its final denial dated December 6, 2018, Prudential notified Plaintiff she had

19  exhausted her administrative levels of review and that she could file a civil action lawsuit in

20  federal court pursuant to ERISA.

21       77.  Prudential's December 6, 2018 final denial letter is clear evidence that it not

22  only abused its discretion, but also breached its fiduciary duty to Plaintiff by failing to provide

23  a "full and fair review," as required by ERISA.

24       78.  During its review, Prudential either negligently, or intentionally committed

25  numerous ERISA procedural violations as identified herein which paved the way and allowed

26  Prudential to deny Plaintiff's claim, even though ERISA's regulations were enacted to protect

27  employee/beneficiary's rights such as Plaintiff's.



*10091 Park Run Drive, Suite 200*
*Las Vegas, Nevada 89145-8868*
*(702)384-9900; fax (702)384-5900*
*Info@SJPlawyer.com*

Page 12 of 18

79.     Prudential's ERISA violations include but are not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that she met the "Any Gainful Occupation" definition of disability in the Policy.

80.     In evaluating Plaintiff's claim on appeal, Prudential owed her a fiduciary duty and had an obligation pursuant to ERISA to administer it, "solely in [her] best interests and other participants" which it failed to do.[1]

81.     Prudential failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her claim/appeal so she could prove that she is disabled as that term is defined in the Policy.

82.     Prudential's failure to investigate the claim and to engage in this dialogue, and failure to ask for and/or obtain the evidence it believed was necessary and critical to cure any deficiencies so Plaintiff could perfect and have her claim approved by Prudential, is particularly egregious given the nature and severity of Plaintiff's disabling medical conditions which included objective medical findings as well as her subjective medical complaints which both proved she was disabled as defined in its Policy.

83.     Prudential's failure to engage Plaintiff in a dialogue during its review of her claim is evidence that Prudential's biased review and denial of Plaintiff's claim was motivated by its financial conflict of interest.

84.     Plaintiff asserts Prudential's review was neither full nor fair because it violated

---

[1]It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone*, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).



10091 Park Run Drive, Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJPlawyer.com

1   ERISA, specifically, 29 U.S.C. § 2560.503-1, and was an abuse of any discretion that may

2   be afforded to it in the Policy for many reasons including, but not limited to: failing to credit

3   Plaintiff's reliable evidence including not giving significant, or even proper weight to the SSA's

4   rationale which resulted in SSA's decision to approve her disability claim; by failing to have

5   Plaintiff's claim reviewed by a truly independent medical professional; by having Plaintiff's

6   claim reviewed by the same medical professionals at two separate levels of review; by failing

7   to obtain an Independent Medical Examination or a Functional Capacity Evaluation when the

8   Policy allowed for one and Plaintiff's disabling medical conditions, her subjective complaints,

9   and work limitations could not easily be understood with only a medical-records "paper

10  review," which raises legitimate questions about the thoroughness and accuracy of

11  Prudential's review and its denials; by providing a biased and one sided review of Plaintiff's

12  claim that failed to consider all the evidence submitted by her; by de-emphasizing medical and

13  other evidence which supported Plaintiff's claim and its approval; by disregarding and/or failing

14  to consider Plaintiff's disabling subjective and self-reported complaints/symptoms/limitations;

15  by failing to consider the combined effect that all of her medical conditions and resulting

16  limitations documented in her medical evidence would have on her ability to work in any

17  gainful occupation; by abdicating its ERISA fiduciary duty and retaining a biased company such

18  as MES Solutions to be involved in the review of Plaintiff's claim; by abdicating its fiduciary

19  duty and allowing MES Solutions to retain biased doctors such as Drs. Topper and Polanco to

20  be involved in the review of her claim; by failing to engage Plaintiff in a dialogue so she and

21  her medical professionals could respond to Prudential's reviewing medical professionals' – Drs.

22  Topper's and Polanco's – reports by submitting the necessary evidence to perfect her claim

23  so she could prove she is "Disabled" from working in "Any Gainful Occupation" as those terms

24  are defined in the Policy; and by failing to consider the impact the side-effects that Plaintiff's

25  medications would have on her ability to engage in any occupation.

26          85.    Plaintiff asserts a reason Prudential provided an unlawful review which was

27  neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to



10091 Park Run Drive, Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJPlawyer.com

1   its financial conflict of interest that manifested as a result of the dual roles Prudential

2   undertook as the decision maker and the payor of benefits.

3       86.    Prudential's conflict of interest provided it with a financial incentive to deny

4   Plaintiff's long-term disability claim, because every dollar it saved in not paying Plaintiff the

5   disability benefits she deserves and is entitled to, now represents a dollar of profit for

6   Prudential.

7       87.    Prudential's actions are similar to the conflicted and unlawful review provided

8   by another insurance company where the Ninth Circuit stated, "The plan with a conflict of

9   interests also has a financial incentive to cheat." *Salomaa v. Honda Long Term Disability Plan*,

10  637 F.3d 958, 970 (9th Cir. 2011).

11      88.    Prudential's financial conflict of interest manifested when it denied Plaintiff's

12  claim because Prudential saved *over a hundred and fifty thousand dollars* ($150,000) in

13  unpaid benefits to her, otherwise due her.

14      89.    Plaintiff is entitled to discovery regarding Prudential's aforementioned conflicts

15  of interest, bias and business relationships referenced herein, as well as the conflicts of

16  interest of any third-party vendor (including but not limited to MES Solutions) hired by

17  Prudential and any medical professional (including but not limited to Drs. Topper and Polanco)

18  retained by Prudential and/or Prudential's third-party vendor to review Plaintiff's claim, and of

19  any individual, medical professional or otherwise, who reviewed any evidence and/or

20  participated in the review of her claim.

21      90.    The Court may allow discovery in order to properly weigh and consider extrinsic

22  evidence regarding the nature, extent and effect of *any* conflict of interest and/or of any ERISA

23  procedural violation which may have impacted or influenced Prudential's decision to deny her

24  long-term disability claim.

25      91.    This Court in *Hertz v. Hartford Life & Accident Ins. Co.*, 991 F. Supp 2d 1121,

26  1136 (D. Nev 2014), reversed the denial of an ERISA disability claim by a conflicted insurance

27  company after allowing discovery into various conflicts of interest and bias.  Plaintiff's discovery



LAW OFFICES OF
STEVEN J. PARSONS

*10091 Park Run Drive, Suite 200*
*Las Vegas, Nevada 89145-8868*
*(702)384-9900; fax (702)384-5900*
Info@SJPlawyer.com

Page 15 of 18

revealed that in an extremely high percentage of ERISA disability claims, the disability

insurance company's third-party vendor and its reviewing doctors had opined that a claimant

was able to work and was not disabled:

> "Accordingly, MLS found that approximately 95% of all claimants could perform some type of work. During that same time frame, Dr. Rim reviewed fourteen (14) claims for Hartford…Significantly, of those fourteen (14) claims reviewed, Dr. Rim did not find that a single claimant was completely unable to perform any type of work.

> ***"Accordingly, Dr. Rim found that 100% of all claimants could perform some type of work.***

> "The Court finds these statistics strongly suggest that both MLS and Dr. Rim harbored a significant bias towards finding a claimant capable of performing some type of work.  *See Montour*, 588 F.3d at 634 (noting relevance of statistics regarding Hartford's rate of claims denials or how frequently it contracts with the file reviewers it employed in that case to the issue of bias)." (emphasis added).

92.     With regard to whether Plaintiff meets the "Any Gainful Occupation" definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claims *de novo*, because even if the Court concludes the Policy confers discretion, the unlawful violations of ERISA committed by Prudential as referenced herein are so flagrant that it justifies *de novo* review.

93.     Regardless of the standard of review, Plaintiff is entitled to discovery regarding the conflicts of interest, bias and ERISA procedural violations referenced herein.

94.     As a direct result of Prudential's decision to terminate Plaintiff's disability claim and benefits, she has been injured and suffered damages in the form of lost long-term disability benefits, in addition to other potential non-disability employee benefits she may be entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled in this matter.

95.     Upon information and belief, Plaintiff alleges other potential non-disability employee benefits may include but not be limited to, health insurance (coverage) and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for



1    her and her family/dependents.

2        96.    Plaintiff seeks any and all employee benefits, including but not limited to

3    disability benefits and any other benefit she may be entitled to and due from Defendants as

4    a result of being found disabled in this matter.

5        97.    Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid disability and

6    non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs

7    from Defendants.

8        98.    Plaintiff is entitled to prejudgment interest at the legal rate within Nevada law,

9    or at such other rate as is appropriate to compensate her for the losses she has incurred as

10   a result of Defendants' nonpayment of benefits.

11       **WHEREFORE**, Plaintiff prays for judgment as follows:

12       1.    For an Order finding that the evidence in Plaintiff's claim is sufficient to prove

13   that she met and continues to meet the "Any Gainful Occupation" definition of disability set

14   forth in the relevant Plan and/or Policy, and that she is entitled to disability benefits, and any

15   other non-disability employee benefits that she may be entitled to as a result of that Order,

16   from the date she was first entitled to but was denied these benefits through the date of

17   judgment with prejudgment interest thereon;

18       2.    For an Order directing Defendants to continue paying Plaintiff the claimed

19   benefits until such a time as she meets the conditions for the termination of benefits;

20       3.    For attorney's fees and costs incurred as a result of prosecuting this suit

21   pursuant to 29 U.S.C. §1132(g); and

22   ...

23   ...

24   ...

25   ...

26   ...

27   ...



10091 Park Run Drive, Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJPlawyer.com

1        4.       For such other and further relief as the Court deems just and proper.

2    Dated: Friday, January 18, 2019.

3                                         Scott E. Davis
                                     Scott E. Davis, P.C.

4                                         and
                                     Law Offices of Steven J. Parsons

5                                         /s/ Steven J. Parsons

6                                         STEVEN J. PARSONS
                                     Nevada Bar No. 363

7                                         Attorneys for Plaintiff

8                                         **MICHELE COSGROVE**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27



10091 Park Run Drive, Suite 200
Las Vegas, Nevada 89145-8868
(702)384-9900; fax (702)384-5900
Info@SJPlawyer.com